UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ERIC KYLE WIST,

                         Plaintiff,                              **OPINION AND ORDER**

          -against-                                 22 Civ. 7570 (JCM)

MIDDLETOWN POLICE DEPARTMENT, CITY
OF MIDDLETOWN, NICHOLAS IANNUZZI,
EVAN COLON, ANGEL ESTREMERA, KELSEY
GAGE, AND PATRICK CUNNINGHAM,

                          Defendants.
------------------------------------------------------------X

        Plaintiff Eric Kyle Wist ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983

against Defendants Evan Colon, Patrick Cunningham, Angel Estremera, Kelsey Gage and

Nicholas Iannuzzi (collectively, "Individual Defendants"), along with the Middletown Police

Department (the "MPD") and the City of Middletown (collectively, "Defendants"). (Docket Nos.

1, 51).[1]  Presently before the Court is Defendants' motion for summary judgment pursuant to

Federal Rule of Civil Procedure 56, (Docket No. 62), accompanied by a memorandum of law in

support of the Motion, (Docket No. 72) (together, "Motion").  Plaintiff filed an opposition to

Defendants' Motion ("Opposition"), (Docket No. 78), and Defendants filed a reply ("Reply"),

(Docket No. 85).  For the reasons set forth below, Defendants' motion for summary judgment is

granted in part and denied in part.[2]

---

[1] The original complaint names two additional defendants — Officer Gregory Hart and Officer Michael Ribeiro.
However, claims relating to those defendants were dismissed with prejudice on September 8, 2023. (Docket No. 30).
In addition, the First Amended Complaint, which was filed on March 25, 2024, does not name them as defendants,
nor does it include any allegations against them. (Docket No. 51).  Thus, all claims against Officers Hart and Ribeiro
are dismissed with prejudice.

[2] The parties have consented to the undersigned for all purposes, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the
Federal Rules of Civil Procedure. (Docket No. 40).

## I. BACKGROUND

### A. Relevant Facts

The following facts, based on evidence submitted in support of Defendants' Motion and Plaintiff's Opposition,[3] are construed in the light most favorable to Plaintiff as the party opposing summary judgment. *See Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018). Any disputes of material fact are noted.[4]

At the time of the underlying incident, Plaintiff was homeless and had mental health issues. (Def. 56.1 ¶ 90; Pl. 56.1 Resp. ¶ 90). He believes that he "likely" interacted with the Individual Defendants prior to September 2020 because "he has dealt with the police before several times." (Pl. 56.1 Resp. ¶ 9). According to Defendants, Lieutenant (formerly Sergeant) Evan Colon was "not at all familiar" with Plaintiff before September 6, 2020. (Def. 56.1 ¶ 7). Officers Kelsey Gage and Angel Estremera also denied interacting with Plaintiff before September 6, 2020, and were not aware that other MPD officers interacted with him previously. (*Id.* ¶¶ 9, 60). Officer Nicholas Iannuzzi explained that he interacted with Plaintiff when he was a corrections officer in Orange County Jail. (*Id.* ¶ 10). He testified at his deposition that "maybe" he saw Plaintiff a hundred times, (Docket No. 64-5 at 26:3-13), but Plaintiff did not appear to have mental health challenges, and he was not violent in the jail, (Def. 56.1 ¶ 10; Pl.

---

[3] Specifically, the facts are taken from (1) Defendants' Statement of Material Facts, submitted pursuant to Local Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York, (Docket No. 63), (2) Plaintiff's Counterstatement to Defendants' Statement of Material Facts, (Docket No. 79), and (3) the affidavits and exhibits submitted by the parties in support thereof. All page number citations herein refer to the page number assigned upon electronic filing unless otherwise noted.

[4] Defendants argue that, in many instances in Plaintiff's Counterstatement, Plaintiff asserts that he does not recall or lacks knowledge regarding a certain fact, which is insufficient to create a dispute of material fact. (Docket No. 85 at 4). Case law supports Defendants' position. *See AFL Fresh & Frozen Fruits & Vegetables v. De-Mar Food Svcs. Inc.*, No. 06 Civ. 2142 (GEL), 2007 WL 4302514, at *4 (S.D.N.Y. Dec. 7, 2007) (stating that "unsupported denials, without more, cannot create disputes of material fact," and that "a nonmovant cannot raise a material issue of fact by denying statements ... for lack of knowledge and information"). The Court acknowledges that these responses do not create a dispute, and will reference them as necessary in its Opinion and Order.

56.1 Resp. ¶ 10).  He further maintains that he never spoke to his colleagues about Plaintiff. (Docket No. 64-5 at 27:4-23).

On September 6, 2020, Plaintiff had two separate encounters with the MPD.

**1.  Plaintiff's First Encounter with the MPD on September 6, 2020**

On September 6, 2020, Lieutenant Colon and Officer Gage responded to a call from a homeless shelter at 38 Seward Avenue, regarding a fight between Plaintiff and another shelter resident. (Def. 56.1 ¶¶ 1, 68; Pl. 56.1 Resp. ¶¶ 1, 68).  Plaintiff stole a bike from the resident, which caused an argument between the two men that "almost" became physical. (Def. 56.1 ¶ 68; Pl. 56.1 Resp. ¶ 68).  After the argument, Plaintiff tried to re-enter the building, but the shelter denied him entrance. (Def. 56.1 ¶ 69; Pl. 56.1 Resp. ¶ 69).  In response, Plaintiff punched a glass window near the entrance of the shelter, causing it to shatter. (Def. 56.1 ¶ 69; Pl. 56.1 Resp. ¶ 69; Docket No. 65-1 at 1-2).

Lieutenant Colon arrived first at the shelter, and another shelter resident told him that he was in a "fight" with Plaintiff. (Def. 56.1 ¶ 2).  Plaintiff maintains that this altercation was not physical. (Pl. 56.1 Resp. ¶ 2).  The shelter resident identified Plaintiff, who was walking nearby, as the man with whom he fought. (Def. 56.1 ¶ 2).  Lieutenant Colon then drove towards Plaintiff, exited his vehicle, and requested that Plaintiff "come here for a second." (*Id.* ¶ 3).  Plaintiff does not recall what Lieutenant Colon said to him. (Pl. 56.1 Resp. ¶ 3).  In response, Plaintiff "stopped … threw his backpack on the ground … and then took off running." (Def. 56.1 ¶ 4).  Lieutenant Colon did not chase Plaintiff because he had not yet observed the broken window: "I like to know whether I have actual probable cause before I start chasing people." (*Id.* ¶ 6).  Instead, he picked up Plaintiff's backpack and saw the name "Eric Wist" inside. (*Id.* ¶ 5).  Plaintiff disputes that Lieutenant Colon did not chase him and contends that "[t]he officer came up to [him],

grabbed him and put his head against the wall." (Pl. 56.1 Resp. ¶ 6).  Officer Gage arrived at the

shelter and obtained a signed complaint for Criminal Mischief. (Def. 56.1 ¶ 8).

**2. Plaintiff's Second Encounter with the MPD on September 6, 2020**

At approximately 3:00 p.m. on September 6, 2020, Officer Iannuzzi received a call about

an individual spray painting a building in downtown Middletown. (Def. 56.1 ¶ 12).  When he

saw a photograph of the suspect he recognized him as Eric Wist. (*Id.*).  Officer Iannuzzi

responded to the call and observed Plaintiff walking down the street with another individual. (*Id.*

¶ 14).  Plaintiff was wearing the same clothing as the individual in the photograph, and he had

green spray paint on his hands. (*Id.*).  At the time, Officer Iannuzzi was aware of an earlier call

concerning Plaintiff damaging property at the shelter. (*Id.* ¶ 15).  When Officer Iannuzzi saw

Plaintiff he parked his car and walked across the street to "stop [Plaintiff]." (*Id.*).  According to

Officer Iannuzzi, he "confronted" Plaintiff, referring to him as "Eric," but Plaintiff replied that

"his name wasn't Eric, it was Kyle." (*Id.* ¶ 16).  Officer Iannuzzi asserts that he tried to talk to

Plaintiff, but after "less than a minute," Plaintiff tried to "push past" him. (*Id.* ¶ 17).  Officer

Iannuzzi responded by pushing Plaintiff "against the wall and handcuff[ing] him." (*Id.*).  Plaintiff

then "threw himself to the ground" and told Officer Iannuzzi that if "[he] wanted to get him in

the back of the car, [he] was going to have to carry him." (*Id.*).  Plaintiff disputes Officer

Iannuzzi's account.  He states that when Officer Iannuzzi began speaking to him, Plaintiff said,

"I don't want to talk," and continued walking, but Officer Iannuzzi approached him, grabbed

him, and "put [Plaintiff's] head against the wall" of a building. (Pl. 56.1 Resp. ¶¶ 16-17).

Officer Gage arrived on the scene. (Def. 56.1 ¶ 18).  She and Officer Iannuzzi carried

Plaintiff to the back of the police car, opened the door, and tried to place Plaintiff in the car. (*Id.*

¶¶ 18, 27).  Officer Iannuzzi claims that Plaintiff repeatedly kicked him in the chest, and in

response, he struck Plaintiff in the face area with a closed left fist. (*Id.* ¶ 18). Plaintiff does not recall struggling with Officer Iannuzzi before he was placed in the police car, but he admits that he was "yelling a lot," and that he kicked Officer Iannuzzi once but was "not too sure" if he kicked him more than once. (Pl. 56.1 Resp. ¶¶ 18, 74; Def. 56.1 ¶¶ 18, 74). He also does not recall if he kicked Officer Iannuzzi before Officer Iannuzzi punched him. (Pl. 56.1 Resp. ¶ 77; Def. 56.1 ¶ 77). Officer Iannuzzi was eventually able to put Plaintiff in the police car. (Def. 56.1 ¶ 19; Pl. 56.1 Resp. ¶ 19).

The MPD planned to conduct a "show-up" and have a witness to the graffiti incident come to the scene and identify Plaintiff. (Def. 56.1 ¶ 28). However, this became impossible because Plaintiff was "obviously having an episode," according to Officer Iannuzzi. (Docket No. 64-5 at 48:21-49:5). Defendants explain that after Plaintiff was put in the car, he began to "bang his face on the partition and … [wrapped] the seat belt around his neck." (Def. 56.1 ¶¶ 20, 28). Officer Gage also recalls that while Plaintiff was in the car he said that he "was going to kill himself." (*Id.* ¶ 28; Docket No. 64-4 at 35:14-23). While Plaintiff was still in the police car, Officer Gage called Mobile Life Support Services ("Mobile Life") and requested that they respond to the scene. (Def. 56.1 ¶ 28). Officer Gage explained that she called Mobile Life because Plaintiff was "hitting his head repeatedly" and "trying to kill himself," and he needed medical attention to address his injuries and mental health. (*Id.* ¶ 29). Plaintiff does not recall wrapping the seat belt around his neck when he was in the police car, but he does not dispute that he banged his face on the partition. (Pl. 56.1 Resp. ¶ 20).

In response to Plaintiff's behavior, Officer Iannuzzi unraveled the seat belt, removed Plaintiff from the car, and "laid him in a recovery position." (Def. 56.1 ¶ 21). Defendants claim that after Plaintiff was removed from the vehicle, he said he "wanted to die" and was going to

"grab" Officer Iannuzzi's gun, and that he was going to kill Officer Iannuzzi and himself. (*Id.* ¶ 22). Plaintiff disputes that he made these statements. (Pl. 56.1 Resp. ¶ 22).

Lieutenant Patrick Cunningham arrived at the scene just after Plaintiff was removed from the police car. (Def. 56.1 ¶ 35). He observed that Plaintiff was "handcuffed and fighting … with Officer Iannuzzi." (*Id.*). He thought Plaintiff was resisting arrest. (*Id.* ¶ 40). Plaintiff did not appear to Lieutenant Cunningham to be injured. (*Id.*). Lieutenant Cunningham went to assist Officer Iannuzzi. (*Id.* ¶¶ 30, 36). He grabbed Plaintiff and the three of them "went down on the ground on the pavement." (*Id.* ¶¶ 30, 36). Lieutenant Cunningham helped Officer Iannuzzi place Plaintiff in a "recovery position." (*Id.* ¶¶ 35-36). Plaintiff started to smash his face multiple times on the pavement and spit blood at the officers. (*Id.* ¶¶ 22, 36). Plaintiff admits that he "continued to flail his body," "was attempting to kick with his legs," and was also spitting while he was on the ground. (Pl. 56.1 Resp. ¶ 36). When Lieutenant Cunningham tried to hold one of Plaintiff's legs down, he maintains that Plaintiff began "grabbing" and "twisting" Lieutenant Cunningham's watch on his wrist until it broke. (Def. 56.1 ¶ 37). Officer Gage recalls that she was "on" Plaintiff's legs to prevent him from kicking and flailing around. (*Id.* ¶ 30). Lieutenant Cunningham tried to de-escalate the situation by speaking to Plaintiff while Plaintiff was still on the ground, but this did not work. (*Id.* ¶ 44).

Multiple bystanders started gathering. (*Id.* ¶ 21). Officer Iannuzzi requested backup to handle the growing crowd, and several additional officers arrived on the scene. (*Id.*). When Lieutenant Colon arrived he observed that Plaintiff was "smashing his head off the pavement … grinding his chin back and forth on the pavement, almost like a cheese gra[t]er … screaming and yelling … [and] splitting [sic] blood and kicking officers who were trying to hold him down to the ground." (*Id.* ¶ 48). Lieutenant Colon observed Lieutenant Cunningham and Officer Iannuzzi

try to restrain Plaintiff like "[one] would try to restrain … a toddler that was out of control or try to keep them … calm and still." (*Id.* ¶ 52).  He did not see them "punching" or "striking" Plaintiff. (*Id.*).  However, Plaintiff maintains that this is not true, and he felt himself being struck while he was handcuffed on the ground. (Pl. 56.1 Resp. ¶ 52).

Meanwhile, Officer Estremera arrived on the scene. (Def. 56.1 ¶ 61).  He observed a large crowd surrounding his colleagues, and saw that Lieutenant Cunningham and Officer Iannuzzi had Plaintiff on the ground. (*Id.*).  He described Plaintiff as "irate" and said he was attempting to "kick the officers, spit, and [injure] himself by hitting his head on the ground and his chin." (*Id*. ¶ 62).  Officer Estremera applied leg restraints on Plaintiff, at the request of Lieutenant Cunningham, to prevent Plaintiff from kicking. (*Id.* ¶ 63).  Lieutenant Cunningham and Officer Iannuzzi secured Plaintiff's feet, and Lieutenant Colon placed him in a spit mask. (*Id.* ¶¶ 23, 50).  Officer Iannuzzi said that he had no reason to believe Plaintiff was enduring a mental health episode until he began to "smash[] his face off the pavement." (*Id.* ¶ 24).  In the past, he had interacted with arrestees who said suicidal things out of frustration and hit their head on police car partitions. (*Id.*).

Plaintiff does not dispute that he was "smashing his head off the pavement [and] … grinding his chin back and forth on the pavement, almost like a cheese gra[t]er." (Pl. 56.1 Resp. ¶ 48).  However, he either disputes or does not recall what Defendants claim occurred while he was on the ground.  He does not specifically dispute that officers placed him on the ground to prevent him from harming himself, but recalls that he "did not feel comfortable in the situation he was in." (*Id.* ¶ 21).  Plaintiff does not recall "grabbing" Lieutenant Cunningham's wrist or "twisting" his watch. (*Id.* ¶ 37).  He maintains that he "felt himself being struck by police officers while handcuffed on the ground." (*Id.* ¶ 52).  He also claims that he was yelling at least

partly because he was seeking assistance from the bystanders. (*Id.* ¶ 43). In addition, he does not recall any officer attempting to de-escalate the situation. (*Id.* ¶ 44).

When Mobile Life arrived, Lieutenant Colon asked Officers Gage and Estremera to ride with Plaintiff in the ambulance because "anytime somebody is acting out and aggressive, we're not going to leave medical personnel by themselves." (Def. 56.1 ¶ 58). Thus, Officers Gage and Estremera accompanied Plaintiff to the Garnet Health Medical Center ("Medical Center") with Mobile Life. (*Id.* ¶ 32). Mobile Life prepared a report (the "Mobile Life Report") summarizing certain events at the scene and during transport to the hospital. *See* Mobile Life Report, Docket No. 71-1. According to the Mobile Life Report, Plaintiff remained "uncooperative and aggressive throughout the ambulance ride, so [his] vitals were not obtained." (Def. 56.1 ¶ 67; Docket No. 71-1 at 4). However, the parties agree that Plaintiff "calmed down" and became "less irate" during transport. (Def. 56.1 ¶¶ 32, 64; Pl. 56.1 Resp. ¶¶ 32, 64). In the ambulance, Plaintiff was observed having "dried blood on his face but [his] injuries were mostly covered by [his] spit mask." (Def. 56.1 ¶ 66). Officer Gage saw the blood on his face, but did not evaluate him for further injury. (*Id.* ¶ 32). When Officer Gage completed Plaintiff's arrest report she checked off "mental health disability" because of the suicidal statements that Plaintiff made during the incident. (*Id.* ¶ 33). Plaintiff's other medical records note "[s]ome abrasions and bruising to chest and head from altercation present on admission" to the Medical Center, (Docket No. 83-6 at 186), and Plaintiff reported "pain all over his body," (*id.* at 126).

Plaintiff was subsequently charged with two counts of Criminal Mischief, a felony and a misdemeanor (Penal Law §§ 145.00, 145.05); Resisting Arrest, a misdemeanor (Penal Law § 205.30); and Making Graffiti, a violation (Middletown City Code § 288). (Def. 56.1 ¶ 93; Pl. 56.1 Resp. ¶ 93; Docket No. 64-10; Docket No. 69-1). On October 22, 2020, Plaintiff pleaded

guilty in Middletown City Court to Resisting Arrest in connection to the September 6 incident; he received three years' probation. (Def. 56.1 ¶ 91; Pl. 56.1 Resp. ¶ 91; Docket No. 64-10).

## B.    Procedural History

Plaintiff commenced this lawsuit *pro se* on August 31, 2022. (Docket No. 1).  On March 25, 2024, he filed an Amended Complaint. (Docket No. 51).  On September 9, 2024, Defendants filed the instant motion, (Docket No. 62), accompanied by a memorandum of law in support, (Docket No. 72), a Statement of Material Facts pursuant to Local Civil Rule 56.1, (Docket No. 63), multiple affidavits on behalf of the Individual Defendants, (Docket Nos. 65-69),[5] an Affidavit of Alex Smith, dated September 9, 2024, (Docket No. 64), an Affidavit of Richard Regino, dated September 3, 2024, (Docket No. 70), and an Affidavit of Todd VanBuren, dated August 15, 2024, (Docket No. 71), with multiple exhibits attached thereto.  Plaintiff filed his Opposition, through counsel, on October 23, 2024, (Docket No. 78), which included his response to Defendants' Rule 56.1 Statement of Material Facts, (Docket No. 79), and an Affidavit of Renee K. Jones, dated October 23, 2024, (Docket No. 80), with multiple exhibits attached thereto.  Defendants filed their Reply on October 31, 2024. (Docket No. 85).

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, the court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine dispute as to a material fact "exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the nonmovant's favor." *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (citation omitted); *see also*

---

[5] This includes Affidavits of Kelsey Gage, (Docket No. 65), Angel Estremera, (Docket No. 66), Evan Colon, (Docket No. 67), Patrick Cunningham, (Docket No. 68), and Nicholas Iannuzzi, (Docket No. 69).

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48 (1986).  "A fact is material if it might affect the outcome of the suit under the governing law." *Casalino v. N.Y. State Catholic Health Plan, Inc.*, No. 09 Civ. 2583 (LAP), 2012 WL 1079943, at *6 (S.D.N.Y. Mar. 30, 2012) (citation and internal quotations omitted).

In reviewing a motion for summary judgment, the court "must draw all reasonable inferences in favor of the nonmoving party" and "disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000) (citations omitted).  That said, the court may not weigh the evidence or determine the truth of the matter, but rather conducts "the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250.  The moving party bears the initial burden of "demonstrating the absence of a genuine issue of material fact." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323). Under federal law, the moving party may meet this burden by pointing to the absence of evidence to support an essential element of the nonmoving claim. *See Tenay v. Culinary Teachers Ass'n of Hyde Park*, 281 F. App'x 11, 12-13 (2d Cir. 2008) (summary order) ("[T]he moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim.") (citation and internal quotations omitted); *see also Hughes v. U.S.*, No. 12 Civ. 5109 (CM), 2014 WL 929837, *4 (S.D.N.Y. Mar. 7, 2014) (holding that a defendant may meet its burden by "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case," but need not "raise a *prima facie* case") (quoting *Celotex*, 477 U.S. at 325).

Once the moving party has met its initial burden, the burden shifts to the nonmoving party to "present evidence sufficient to satisfy every element of the claim." *Holcomb*, 521 F.3d at

137.  "The non-moving party is required to 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial,'" *id.* (quoting *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 249-50), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In doing so, Plaintiff "may not rely on conclusory allegations or unsubstantiated speculation, but must support the existence of an alleged dispute with specific citation to the record materials." *Hughes*, 2014 WL 929837, at *3 (citations and internal quotations omitted); *see also* Fed. R. Civ. P. 56(c).  Additionally, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  If the nonmoving party fails to establish the existence of an essential element of the case on which it bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

In the Southern District of New York, the party moving for summary judgment must submit a short and concise statement of material facts it contends are undisputed, and supported by evidence that would be admissible at trial. Local Civ. R. 56.1.  The party opposing summary judgment must specifically controvert the moving party's statement of material facts, or the moving party's facts will be deemed admitted for purposes of the motion. Local Civ. R. 56.1(c); *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.").  However, "allegations of uncontested fact cannot be deemed true simply by virtue of their assertion in a Local Rule 56.1 statement." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001), *abrogated on other grounds*, *Moll v. Telesector Res. Grp., Inc.*, No. 20-3599, 2024 WL 820179 (2d Cir. Feb. 28, 2024).  "[W]here

there are no[] citations or where the cited materials do not support the factual assertions in the [s]tatements, the [c]ourt is free to disregard the assertion." *Id.* (citations and internal quotations omitted).  The court has discretion to conduct an assiduous review of the record even where one of the parties has failed to file such a statement. *Smith v. Yvonne*, 18 Civ. 3371 (JCM), 2023 WL 5152690, at *4 (S.D.N.Y. Aug. 10, 2023) (internal citation and quotations omitted); *see also* Fed. R. Civ. P. 56(c)(3).  Nevertheless, the court is not required to consider what the parties fail to point out." *Id.* (citing *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000)).

## III. DISCUSSION

### A. Excessive Force

Defendants argue that Plaintiff's excessive force claim fails as a matter of law because Plaintiff "violently resist[ed] arrest," and the use of force was required because Plaintiff had committed two felonies. (Docket No. 72 at 7).  Plaintiff asserts that summary judgment is not appropriate because there are multiple genuine disputes of material fact regarding whether Defendants used excessive force. (Docket No. 78 at 12).

A police officer's use of force is excessive, thereby violating the Fourth Amendment, "if it is objectively unreasonable 'in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).  Courts must evaluate the reasonableness of a particular use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. This inquiry considers a number of factors, "including 'the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or

maliciously and sadistically for the very purpose of causing harm.'" *Figueroa v. Mazza*, 825 F.3d 89, 105 (2d Cir. 2016) (citing *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 251-52 (2d Cir. 2001)).  Courts consider the totality of the circumstances, "including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000).

   "Furthermore, to prevail on an excessive force claim, Plaintiff must have suffered an actual injury that resulted from Defendants' use of force." *See Warren v. Ewanciw*, 15 Civ. 8423 (JCM), 2019 WL 589488, at *9 (S.D.N.Y. Feb. 13, 2019) (quoting *Youngblood v. City of Mount Vernon*, 14 Civ. 10288 (VB)(JCM), 2017 WL 7804731, at *7 (S.D.N.Y. Dec. 29, 2017), *report and recommendation adopted*, 2018 WL 1114760 (S.D.N.Y. Feb. 26, 2018)).  "A plaintiff need not sustain severe injury to maintain a claim that the use of force was objectively unreasonable under the Fourth Amendment." *Id.* (internal citations and quotations omitted).  Nor must a plaintiff seek medical attention to maintain an excessive force claim. *Kayo v. Mertz*, 531 F. Supp. 3d 774, 797 (S.D.N.Y. 2021).  However, "the force used by the law enforcement officer must generally be more than *de minimis* for a claim to be actionable." *Warren*, 2019 WL 589488, at *9 (internal quotations omitted); *Kayo*, 531 F. Supp. 3d at 798.  "*De minimis* injuries can serve as evidence that *de minimis* force was used." *Kayo*, 531 F. Supp. 3d at 798.

   Here, there are material issues of fact regarding the Individual Defendants' use of force that preclude summary judgment on Plaintiff's excessive force claim.  First, the amount of force used when Plaintiff was handcuffed on the ground is clearly in dispute.  Plaintiff claims that he felt "police officers" strike him while he was handcuffed on the ground. (Pl. 56.1 Resp. ¶ 52). Lieutenant Colon denies this allegation, and states that he did not observe Officers Cunningham or Iannuzzi strike Plaintiff while he was on the ground. (Def. 56.1 ¶ 52).  If a jury credits

Plaintiff's testimony that he was struck while handcuffed on the ground, the jury could find that Defendants used excessive force. *See Caraballo v. City of New York*, 726 F. Supp. 3d 140, 172 (E.D.N.Y. Mar. 28, 2024) (finding that genuine dispute of material fact regarding degree of force used against plaintiff precluded summary judgment in favor of detectives on § 1983 claim); *Saleh v. Savage*, No. 12-CV-0468S, 2015 WL 1608839, at *3 (W.D.N.Y. Apr. 10, 2015) ("If credited by a jury, [the plaintiff's] description of being kicked and struck after being cuffed on the floor would suffice to support his excessive force claims."); *Frost v. New York City Police Dep't*, 980 F.3d 231, 245 (2d Cir. 2020) ("It is a bedrock rule of civil procedure that a district court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented.") (internal quotations omitted).  In addition, although it is undisputed that Officer Iannuzzi punched Plaintiff while trying to get him in the police car, (Def. 56.1 ¶ 77; Pl. 56.1 Resp. ¶ 77), it is disputed whether this punch was a proper use of force.  Thus, there are genuine disputes of material fact regarding whether excessive force was used.

Second, the parties dispute whether the Individual Defendants' use of force was reasonable under the circumstances, particularly in light of the Plaintiff's relatively minor crimes of Criminal Mischief, Making Graffiti, and Resisting Arrest on September 6, 2020. *See Crowell v. Kirkpatrick*, 400 F. App'x 592, 594-95 (2d Cir. 2010) (summary order) (noting that resisting arrest is a "relatively minor" crime).

Third, a question of fact exists regarding whether, and to what extent, Defendants caused any of Plaintiff's injuries.  Plaintiff claims that he was treated at the hospital for injuries to his ribs, back, head, and jaw, that he lost his teeth a few months after the incident, and that his injuries affected him for a prolonged period. (Pl. 56.1 Resp. ¶ 57).  A reasonable jury could find that these injuries are not *de minimis*. *See Hudson v. McMillian*, 503 U.S. 1, 4, 10 (1992) (finding

that "minor bruises and swelling of his face, mouth, and lip," along with "loosened ... teeth and cracked ... partial dental plate," were not *de minimis*). However, Defendants maintain that no evidence in the record supports that the police officers' actions caused "a bruise or minor cut or … any bleeding" to Plaintiff. (Docket No. 72 at 10). In fact, Defendants argue that "[e]ven [Plaintiff] testified that he did not know if his injuries were the result of his own violent and self-destructive actions." (*Id*). Nevertheless, Defendants said that Plaintiff was spitting blood at the officers, and his face was bloody when he was in the ambulance. (Def. 56.1 ¶¶ 22, 32, 36, 66). In addition, Plaintiff's medical reports note "[s]ome abrasions and bruising to chest and head from altercation present on admission," (Docket No. 83-6 at 186), and Plaintiff reported to the hospital that he felt "pain all over his body," (*id.* at 126). A reasonable trier of fact could find that the Individual Defendants caused at least some of these injuries, even if Plaintiff himself cannot definitively say who caused what. *See Doonan v. Vill. of Spring Valley*, 10 CV 7139 (VB), 2013 WL 3305767, at *4 (S.D.N.Y. June 25, 2013). As the Court in *Doonan* found:

> Although plaintiff may have been in some altered state of consciousness at the time of the incident, it is undisputed that plaintiff suffered serious injuries, including cuts to his face, a missing tooth, and broken ribs. Additionally, plaintiff's spinal stimulator stopped working after the incident. Even if plaintiff does not know which of his injuries were caused by his initial fall and which were caused by the officers, *a reasonable trier of fact could find at least some of plaintiff's injuries resulted from plaintiff's being repeatedly knocked to the ground by a taser and then forced into handcuffs*.

*Id.* (emphasis added). Therefore, reviewing the evidence in the light most favorable to the Plaintiff, a reasonable jury could find that the Individual Defendants caused at least some of Plaintiff's injuries.

Defendants correctly maintain that courts have held that "[w]here a plaintiff's allegations are 'contradicted by medical documents, his word alone is not enough to create a genuine dispute

of material fact.'" *Rodriguez v. Cnty. of Nassau*, 18-CV-03845 (JMA)(JMW), 2023 WL

2667076, at *12 (E.D.N.Y. Mar. 28, 2023) (quoting *Rolkiewicz v. City of New York*, 442 F. Supp.

3d 627, 643 (S.D.N.Y. 2020)).  However, Plaintiff's medical records do not irrefutably contradict

his claims. (Docket No. 83-6 at 186).  In fact, Plaintiff's medical records support that he suffered

abrasions and bruising to his chest and head. (Docket No. 83-6 at 186).  Even if every injury is

not reflected in Plaintiff's medical records, "[t]he law does not require that a plaintiff be bleeding

or in need of immediate medical attention to maintain a cause of action for excessive force."

*Gomez v. City of New York*, No. 05 Civ. 2147 (GBD)(JCF), 2007 WL 5210469, at *7 (S.D.N.Y.

May 28, 2007), *report and recommendation adopted*, 2008 WL 3833811 (S.D.N.Y. Aug. 14,

2008).

        Furthermore, the cases that Defendants cite to support their arguments for summary

judgment are inapposite.  In *Rodriguez*, where plaintiff accused multiple police officers of

assault in violation of § 1983, the court observed that "[t]he only evidence in the record that

provide[d] any potential detail about the alleged assault [was] a single sentence from [the

plaintiff's complaint] in which he state[d] that he received unspecified [injuries] to his neck,

back, both arms, ankle and head [from the defendants] kicking him, stepping on his ankle and

pulling him down the stairs." *Rodriguez*, 2023 WL 2667076, at *10 (internal quotations omitted).

The court noted that this was inconsistent with the approximately 200 pages of the plaintiff's

medical records that did not reference his claimed injuries. *Id.* at *11.  Similarly, in *Smith*, the

plaintiff testified that he sustained "scrapes on his face and hands, a gash and bruising on his

knee, welts on his arms, back problems, and nerve damage to his foot" because the officers used

excessive force. *Smith v. City of New York*, 1:18-cv-05079-MKV, 2021 WL 4267525, at *6

(S.D.N.Y. Sept. 20, 2021).  However, the court found that "[n]one of [the plaintiff's] alleged

injuries were documented by medical staff, and his condition was inconsistent with the vicious beating [the plaintiff] allege[d], and [the plaintiff] himself denied injury or trauma." *Id*. at *7. Finally, in *Jenkins*, the court granted the defendant summary judgment because the plaintiff's medical records did not include any information regarding any alleged injury, and plaintiff's own testimony was the only evidence supporting an aspect of the plaintiff's excessive force claim. *Jenkins v. Town of Greenburgh*, No. 13-CV-8845 (NSR), 2016 WL 205466, at *5 (S.D.N.Y. Jan. 14, 2016).

These cases are distinguishable from the instant case. The medical records here support at least some of Plaintiff's testimony, and the documented injuries are consistent with Plaintiff's recollection of events. For example, Plaintiff's reported chest abrasions are consistent with the Individual Defendants holding him on the ground while he was handcuffed. Plaintiff's medical records also indicate head bruising, which could have been caused by Officer Iannuzzi when he admittedly punched Plaintiff in the face area with a closed left fist. (Def. 56.1 ¶ 18). A reasonable jury could conclude that the force used caused Plaintiff's injuries. However, it is also true that a reasonable jury could conclude that Defendants did not use excessive force against Plaintiff. Plaintiff admitted to resisting the police — including kicking Officer Iannuzzi — and performing certain acts of self-harm during the incident. (Pl. 56.1 Resp. ¶¶ 77-78). Thus, viewing the record in the light most favorable to Plaintiff, material issues of fact regarding whether the Individual Defendants used excessive force preclude summary judgment because a "rational finder of fact could find in favor of the nonmoving party." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal quotations omitted).

Accordingly, the Court denies Defendants' motion for summary judgment on Plaintiff's excessive force claim.

**B. Qualified Immunity**

Defendants argue that the Individual Defendants are entitled to qualified immunity. (Docket No. 72 at 10).  Plaintiff contends that qualified immunity is not appropriate "because there are major disputes of fact on the central issues of what force Defendants used and what injuries [Plaintiff] suffered." (Docket No. 78 at 26).

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012).  Officials are "entitled to qualified immunity ... [when] their decision was reasonable, even if mistaken." *Hunter v. Bryant*, 502 U.S. 224, 228-29 (1991).  Indeed, "the qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 229 (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)).  To analyze a qualified immunity defense on summary judgment, courts ask "(1) whether the evidence, viewed in the light most favorable to the plaintiff, makes out a violation of a statutory or constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010).  "[I]n the excessive force context, 'the question for the purposes of qualified immunity is whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances.'" *Read v. Town of Suffern Police Dep't*, No. 10 Civ. 9042 (JPO), 2013 WL 3193413, at *7 (S.D.N.Y. June 25, 2013) (quoting *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir. 1995)).

Here, there are genuine issues of material fact regarding the Individual Defendants' use of force, *see supra* Section III.A, which precludes the Court from finding the Individual

Defendants' conduct objectively reasonable as a matter of law. *See Bacote v. Riverbay Corp.*, 1:16-cv-1599-GHW, 2017 WL 11567934, at *12 (S.D.N.Y. Nov. 8, 2017) ("Because summary judgment on qualified immunity grounds is inappropriate where there are disputed issues of fact pertinent to a determination of the reasonableness of an officer's conduct, [the defendant's] motion for summary judgment on this basis is denied."); *see also Nazario v. Thibeault*, No. 22-01657, 2023 WL 7147386, at *2 (2d Cir. Oct. 31, 2023) (open material issues of fact preclude finding of qualified immunity).  Under the circumstances presented here, a reasonable jury could find that Officer Iannuzzi's closed fist punch was excessive, and that the Individual Defendants struck Plaintiff while he was handcuffed on the ground and no longer resisting.  Accordingly, the Court will not grant Defendants qualified immunity.

## C.  Americans with Disabilities Act

Plaintiff brought a claim under the Americans with Disabilities Act ("ADA") against Defendants City of Middletown and MPD (collectively, "Municipal Defendants"). (Docket No. 51 ¶¶ 38-40).  The Municipal Defendants argue that the Court should grant summary judgment on Plaintiff's ADA claim because the Individual Defendants reasonably accommodated Plaintiff on September 6, 2020. (Docket No. 72 at 15).  Plaintiff maintains that genuine disputes of fact preclude summary judgment on this claim. (Docket No. 78 at 19).

To prevail on a claim under the ADA, "a plaintiff must demonstrate: (1) that [the plaintiff] is a qualified individual with a disability; (2) that [the plaintiff] was excluded from participation in a public entity's services, programs or activities …; and (3) that such exclusion or discrimination was due to [the plaintiff's] disability." *Tardif v. City of New York*, 991 F.3d 394, 404 (2d Cir. 2021).  "A plaintiff may base [his ADA] claim on any of three theories of liability: disparate treatment (intentional discrimination), disparate impact, or failure to make a

reasonable accommodation." *Id.* "[T]he ADA requires police departments to make reasonable accommodations for disabled suspects." *Felix v. City of New York*, 16-cv-5845 (AJN), 2020 WL 6048153, at *4 (S.D.N.Y. Oct. 13, 2020) (collecting cases). Reasonable accommodations may include "delaying, where safety concerns permit, approaching individuals in the middle of a health crisis." *Kew v. Town of Northfield, VT*, Case No. 5:19-cv-78, 2023 WL 4172741, at *10 (D. Vt. Apr. 17, 2023) (internal quotations omitted), *order vacated on reconsideration on other grounds*, 681 F. Supp. 3d 247 (D. Vt. 2023).

A court analyzing an ADA claim must evaluate "whether the officers' accommodations were reasonable under the circumstances." *Williams v. City of New York*, 121 F. Supp. 3d 354, 368 (S.D.N.Y. 2015); *see also Lloyd v. City of New York*, 246 F. Supp. 3d 704, 726 (S.D.N.Y. 2017) (noting that the success of the plaintiff's ADA claim against defendant municipality depended on "whether officers reasonably accommodated [the plaintiff's] disability"). "The Second Circuit Court of Appeals has not explicitly adopted an exigent-circumstances exception to an ADA reasonable-accommodations claim." *Kew*, 2023 WL 4172741, at *10. However, "threatening or exigent circumstances should be considered when determining the reasonableness of the proposed accommodation." *Butchino v. City of Plattsburg*, 8:20-cv-796 (MAD/CFH), 2022 WL 137721, at *10 (N.D.N.Y. Jan. 14, 2022) (internal quotations omitted). "To determine whether exigent circumstances excuse an officer from providing a reasonable accommodation, courts consider whether the police had (1) secured the scene and (2) ensured there was no threat to human life." *Kew*, 2023 WL 4172741, at *10 (internal quotations omitted). In the arrest context, even if there was probable cause to arrest the plaintiff, the defendant "must establish that providing [the plaintiff] an accommodation during the police officers' investigation would have been unreasonable to rebut [the plaintiff's] *prima facie* case that an accommodation

was available." *Williams*, 121 F. Supp. 3d at 369 (internal quotations omitted).

"[A] plaintiff can only establish that a defendant failed to provide a reasonable accommodation in violation of the ADA if 'the defendant knew or reasonably should have known of the plaintiff's ... disability[.]'" *Shine v. New York City Housing Auth.*, No. 19-cv-04347 (RA), 2020 WL 5604048, at *7 (S.D.N.Y. Sept. 18, 2020) (quoting *Logan v. Matveevskii*, 57 F. Supp. 3d 234, 256 (S.D.N.Y. 2014)). "In other words, a defendant cannot be held liable for failing to provide reasonable accommodations when it had no actual or constructive knowledge of the need for any accommodations." *Shine*, 2020 WL 5604048, at *7 (internal quotations omitted). "To satisfy the notice requirement, a plaintiff must demonstrate that the defendant was aware that the plaintiff was disabled within the meaning of the ADA." *Lewis v. Blackman Plumbing Supply LLC*, 51 F. Supp. 3d 289, 305 (S.D.N.Y. 2014) (internal quotations omitted). "[R]easonable accommodations are required if the disability is obvious." *Sage v. City of Winooski*, No. 2:16-cv-116, 2017 WL 1100882, at *3-4 (D. Vt. Mar. 22, 2017).

Here, although a jury could find that the Individual Defendants reasonably accommodated Plaintiff given the exigent circumstances present, the Court cannot conclude that as a matter of law. It is unclear what, if anything, the Individual Defendants knew about Plaintiff's mental illness, which creates a triable issue of fact. *See Fera v. City of Albany*, 568 F. Supp. 2d 248, 259 (N.D.N.Y. 2008) (finding triable issue of fact where security guard testified that he told defendant police officers that the plaintiff had an epileptic seizure on the morning of the subject incident but the officers denied knowledge of the seizure). Although Defendants concede that this issue cannot be resolved on summary judgment, they seem to argue that this factual dispute does not matter since they provided Plaintiff with reasonable accommodations. (Docket No. 72 at 15). However, all of the accommodations provided were after Plaintiff was

put in handcuffs and placed in the back of the police car.  It's unclear on this record whether

providing a reasonable accommodation before making the arrest — including a cooling off

period or delay in taking Plaintiff into custody — would have posed an unjustifiable risk to

public safety.  *See Williams*, 121 F. Supp. 3d at 368.  "Determining the reasonableness of an

accommodation is a fact-specific question that often must be resolved by a factfinder…And [a]

defendant is entitled to summary judgment only if the undisputed record reveals that the plaintiff

was accorded a plainly reasonable accommodation." *Lloyd*, 246 F. Supp. 3d at 726 (internal

quotations omitted).  The Court cannot conclude as a matter of law on this record that Plaintiff

was provided a reasonable accommodation.

Accordingly, the Court denies summary judgment on Plaintiff's ADA claim.

## D.  *Monell* Liability

Defendants argue that Plaintiff's *Monell* claim against the City of Middletown fails as a

matter of law because it lacks the necessary particularity. (Docket No. 72 at 23).  Plaintiff

counters that there is a question of fact as to whether the City of Middletown adequately trained

its MPD officers. (Docket No. 78 at 24).

A municipality may be held liable for damages under Section 1983 for the

unconstitutional acts of its employees. *See Monell v. Dep't of Soc. Servs. of City of New York*,

436 U.S. 658, 690 (1978).  To establish municipal liability under Section 1983 "for

unconstitutional acts by a municipal employee below the policymaking level," *Vann v. City of

New York*, 72 F.3d 1040, 1049 (2d Cir. 1995), a plaintiff must establish "(1) an official policy or

custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right," *Wray

v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d

393, 397 (2d Cir. 1983)).  The "policy or custom" element requires a plaintiff to demonstrate that

a municipal policy *itself* violates the constitution. *See Roe v. City of Waterbury*, 542 F.3d 31, 36

(2d Cir. 2008); *accord Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("[U]nder § 1983, local

governments are responsible only for 'their *own* illegal acts[;]' [t]hey are not vicariously liable

… for their employees' actions.") (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)

(emphasis in original)).

> A policy or custom may be established by showing:

>> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (internal citations

omitted).  Notably, "[t]he means of establishing deliberate indifference will vary given the facts

of the case and need not rely on any particular factual showing.  The operative inquiry is whether

the facts suggest that the policymaker's inaction was the result of a 'conscious choice' rather

than mere negligence." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 128 (2d Cir. 2004)

(quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

> In addition to showing a policy or custom, a plaintiff must demonstrate an affirmative

causal link between an official policy or custom and the plaintiff's injury to support municipal

liability. *See Batista*, 702 F.2d at 397.  The policy must be "closely related to" or the "moving

force behind" the ultimate injury. *Canton*, 489 U.S. at 391 (alteration omitted); *accord City of

Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985) ("The fact that a municipal 'policy' might

lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular

policy be the 'moving force' behind a constitutional violation.  There must at least be an affirmative link between the training inadequacies alleged, and the particular constitutional violation at issue.").

As the Supreme Court has instructed, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of the persons with whom the police come into contact." *Canton*, 489 U.S. at 388.  Therefore, it is not enough for the plaintiff "to prove that an injury or accident could have been avoided if an officer had had better or more training . . . ." *Id.* at 391.  Rather, a successful failure to train claim "usually requires proof of a 'pattern of similar constitutional violations by untrained employees.'" *Miller v. Cnty. of Nassau*, No. 10 Civ. 3358 (AOS)(AKT), 2013 WL 1172833, at *8 (E.D.N.Y. Mar. 19, 2013) (quoting *Connick*, 563 U.S. at 62).  Therefore, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (internal quotations and citations omitted).  A municipality can only be held liable for a single instance of unconstitutional conduct when that instance was carried out in furtherance of a "municipality-wide custom, practice, or procedure." *De Michele v. City of New York*, No. 09 Civ. 9334 (PGG), 2012 WL 4354763, at *19-20 (S.D.N.Y. Sept. 24, 2012) (citations omitted).

However, there is also a narrow category of cases in which "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64.  Further, to proceed beyond summary judgment, the plaintiff must identify a specific deficiency in the

relevant training program and establish that the deficiency is closely related to the ultimate injury, such that it caused the constitutional deprivation. *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) (citing *Green v. City of New York*, 465 F.3d 65, 81 (2d Cir. 2006)).

Here, Plaintiff contends that there is a "question of fact [regarding] whether [his] constitutional violations were caused by the City of Middletown's failure to adequately train its officers." (Docket No. 78 at 23). However, Plaintiff's Amended Complaint is completely devoid of any allegations that the City of Middletown failed to train its officers, let alone allegations that this failure to train caused a deprivation of Plaintiff's constitutional rights. In addition, Plaintiff has not identified any other instances where MPD officers used excessive force in arresting an individual with a mental health disability because the City of Middletown failed to properly train its officers regarding handling individuals with mental health challenges. Further, Plaintiff has not described a "municipality-wide custom, practice, or procedure" that resulted in the September 6, 2020 incident or one that reflects the City of Middletown's deliberate indifference to individuals with mental health issues. There is also no evidence in the record to support Plaintiff's conclusory allegation that the MPD intentionally decreased its training. (*Id.* at 25). Moreover, Plaintiff "does not specify what type of training the officers lacked, and there are no facts in the record that would allow a jury to infer that a lack of training caused [his] injury, or that the [City of Middleton's] alleged failure amounted to deliberate indifference." *See Selvaggio v. Patterson*, 93 F. Supp. 3d 54, 77-78 (E.D.N.Y. 2015).

Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiff's *Monell* claim.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part. Plaintiff's *Monell* claim is dismissed, and his excessive force and ADA claims remain.

The Clerk of Court is respectfully requested to terminate the pending Motion (Docket No. 62).

Dated:    September 8, 2025
          White Plains, New York

                              SO ORDERED:

                              *Judith C. McCarthy*

                              JUDITH C. McCARTHY
                              United States Magistrate Judge